UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| JOHN P. MELE,<br>    Plaintiff,<br><br>    v.<br><br>HILL HEALTH CENTER, et al.,[1]<br>    Defendants. | NO. 3:06cv455 (SRU) |

## RULING ON MOTIONS FOR SUMMARY JUDGMENT
## AND MOTIONS FOR RECONSIDERATION

John P. Mele brings this civil rights action *pro se* and *in forma pauperis*. Mele's second amended complaint asserts variously that defendants' actions violated his rights under the Constitution and federal statutes including the Americans with Disabilities Act and the Rehabilitation Act, and violated confidentiality laws concerning patient treatment records. His claims for deliberate indifference to medical needs and disclosure of medical information were dismissed on January 8, 2008 (doc. # 53). Defendants have filed a motion for summary judgment on the remaining claims (doc. # 60). Mele has filed a cross-motion for summary judgment (doc. # 63) as well as motions seeking to reinstate his claims for disclosure of medical information and deliberate indifference to medical needs (docs. ## 62, 69). For the reasons that follow, defendants' motion is **GRANTED** and Mele's motions are **DENIED**.

I.   **Mele's Motions for Reconsideration**

Mele has moved to reopen his claims for disclosure of medical information and deliberate

---

[1] The remaining defendants are Hill Health Center, Grant Street Partnership, Linda Maral Hass (née Kalfaian), Elsa Ward, Sandra Chavez Baltazar, and Kathleen Sabel. On March 5, 2007, Mele filed an amended complaint that did not include defendant "Mr. Regan." Thus, any claims against defendant Regan have been withdrawn. On January 8, 2008, I dismissed all claims against defendant Andrew Yim.

indifference to medical needs, which were dismissed in January 2008. Because judgment has not entered, I will treat the motions to reopen as motions for reconsideration of the ruling granting the motion to dismiss.

A motion for reconsideration must be filed and served within ten days from the date of filing of the decision or order from which relief is sought. D. Conn. L. Civ. R. 7(c). Mele seeks reconsideration of a January 8, 2008 ruling in motions filed on July 31, 2008 (doc. # 62) and August 28, 2008 (doc. # 69). Accordingly, the motions are denied as untimely filed.

Mele's motions, however, would be denied even if they had been timely filed. Reconsideration will be granted only if the moving party can identify controlling decisions or data that the court overlooked and that would reasonably be expected to alter the court's decision. *See Schrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995). A motion for reconsideration may not be used to relitigate an issue the court already has decided. *See SPGGC, Inc. v. Blumenthal*, 408 F. Supp. 2d 87, 91-92 (D. Conn. 2006), *aff'd in part and vacated in part on other grounds*, 505 F.3d 183 (2d Cir. 2007).

Mele has not identified any controlling decisions that I overlooked or that would alter my earlier decision. Mele has identified two additional documents and submitted them with his motions, but neither supports granting reconsideration. First, Mele attaches to his motion regarding the disclosure of medical information claim a complaint he submitted to the to the Hill Health Center in November 2006 regarding the disclosure. (Pl. Mot. to Reopen, doc. # 62, at 2-3.) Mele did not submit that complaint in his opposition to the motion to dismiss. Thus, it was not overlooked by the court. More importantly, I cannot determine whether that complaint constitutes an administrative claim sufficient to exhaust his administrative remedies and thereby

fulfills a necessary prerequisite for a claim under the Federal Tort Claims Act ("FTCA"), as I required in my prior order.

Second, Mele attached to his second motion an August 2008 letter indicating that the Department of Health and Human Services ("DHHS") had no record of receiving any communications from Mele, but would permit him to submit a claim form (doc. # 69, at 5-6). In denying Mele's request to excuse his failure to exhaust his administrative remedies or to toll the limitations period for exhaustion, I noted that I was unable to determine whether any communications Mele previously sent to the agency would be sufficient to put the agency on notice of Mele's claims. I referred Mele to the agency for that determination. The letter, written several months after my prior ruling, indicates that the agency did not receive plaintiff's previous communications and therefore was not on notice of Mele's claims. DHHS's indication that it would now allow Mele to file a claim does not show that his claim in this court is timely or that he has exhausted his administrative remedies. Thus, Mele's submission of these two documents does not support reconsideration. The motions for reconsideration are denied.

## II.     Motions for Summary Judgment

Mele and the defendants have submitted cross-motions for summary judgment on the remaining claims. The remaining claims in Mele's second amended complaint include allegations that the defendants failed to make appropriate accommodations for his disabilities, discriminated against him, and denied him due process and equal protection of the law when they: terminated him from a drug treatment program, refused him readmission to that program, failed to provide him administrative remedies, and imposed on him an unreasonable fee for his participation in the program. I agree with the defendants that there are no genuine issues of

material fact remaining for trial and that summary judgment should enter for the defendants and against Mele.

### III.     Standard of Review

Summary judgment is appropriate when the evidence demonstrates that "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986) (plaintiff must present affirmative evidence in order to defeat a properly supported motion for summary judgment).

When ruling on a summary judgment motion, the court must construe the facts in the light most favorable to the nonmoving party and must resolve all ambiguities and draw all reasonable inferences against the moving party.  *Anderson*, 477 U.S. at 255; *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970); *see also Aldrich v. Randolph Cent. Sch. Dist.*, 963 F.2d. 520, 523 (2d Cir. 1992) (court is required to "resolve all ambiguities and draw all inferences in favor of the nonmoving party"), *cert. denied*, 506 U.S. 965 (1992).  When a motion for summary judgment is properly supported by documentary and testimonial evidence, however, the nonmoving party may not rest upon the mere allegations or denials of his pleadings, but rather must present significant probative evidence to establish a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986); *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995).

"Only when reasonable minds could not differ as to the import of the evidence is summary judgment proper."  *Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir. 1991); *see also Suburban Propane v. Proctor Gas, Inc.*, 953 F.2d 780, 788 (2d Cir. 1992).  If the nonmoving

party submits evidence that is "merely colorable," or is not "significantly probative," summary judgment may be granted. *Anderson*, 477 U.S. at 249-50.

> The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact. As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted.

*Id.* at 247-48. To present a "genuine" issue of material fact, there must be contradictory evidence "such that a reasonable jury could return a verdict for the non-moving party." *Id.* at 248.

If the nonmoving party has failed to make a sufficient showing on an essential element of his case with respect to which he has the burden of proof at trial, then summary judgment is appropriate. *Celotex*, 477 U.S. at 322. In such a situation, "there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 322-23; *accord Goenaga v. March of Dimes Birth Defects Foundation*, 51 F.3d 14, 18 (2d Cir. 1995) (movant's burden satisfied if he can point to an absence of evidence to support an essential element of nonmoving party's claim). In short, if there is no genuine issue of material fact, summary judgment may enter. *Celotex*, 477 U.S. at 323.

Where one party is proceeding *pro se*, the court reads the *pro se* party's papers liberally and interprets them to raise the strongest arguments suggested therein. *See Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994). Despite such liberal interpretation, however, a "bald assertion," unsupported by evidence, cannot overcome a properly supported motion for summary judgment. *Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991).

**IV.    Facts**[2]

Hill Health Center's Grant Street Partnership is a federally funded program that provides transitional housing in a men's shelter and behavioral health services for individuals with substance abuse and mental health problems. Grant Street Partnership participates in the Connecticut Judicial Branch's Drug Intervention Program, which is an alternative to incarceration for non-violent drug offenders. Defendant Baltazar was a senior clinician and court liaison and defendant Kalfaian was a clinician at Grant Street Partnership; both were supervised by defendant Sabel.

The parties represent that on December 20, 2004, the state court ordered Mele to enter the drug treatment program run by Grant Street Partnership. Mele stayed at a shelter connected with the program and received treatment at a methadone clinic and the Hospital of St. Raphael. Defendant Kalfaian was the clinician assigned to Mele. Upon admission, Mele signed a Medical Compliance Form agreeing to take all prescribed medications and acknowledging that failure to do so could result in discharge from the treatment program. He also signed a grievance procedures form stating that he had the right to file a grievance against involuntary discharge from the program within twenty-four hours of the incident being grieved. (Defs.' Mot. Summ. J., Ex. 6, doc. # 60-8, at 1, 4.)

Mele kept medication at his "home" and did not take it as prescribed. (Doc. # 83 at 8.) On February 16, 2005, Mele was accused of violating the medication rules. Although urinalysis was negative and a search of his possessions revealed no drugs, Mele was terminated from the

---

[2] The facts are taken from defendants' Local Rule 56(a)1 Statement (doc. # 60-9), Mele's Local Rule 56(a)2 Statement (doc. # 83) and the exhibits submitted by both parties. Mele did not file a Local Rule 56(a)1 Statement in support of his motion for summary judgment.

program and told to report to state court.

On February 24, 2005, the state court asked the defendants to readmit Mele to the program. The defendants refused. Mele's attorney asked if they would readmit him after thirty days. Again, the defendants refused. The state court then ordered Mele to serve his three-year sentence. (Pl. Amended Compl., doc. # 31, at 4 ¶¶ 19-23.)

**V.     Discussion**

Mele seeks injunctive relief and an award of money damages. Defendants move for summary judgment, or in the alternative to dismiss, on several grounds.

    A.    <u>Claims under HIPAA, Mental Health Patients' Bill of Rights, ADA and the Rehabilitation Act</u>

Mele has not presented evidence creating a genuine issue of material fact regarding his claims that he is entitled to relief under the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"), Pub.L. 104-191, 110 Stat. 1936 (codified as amended in scattered sections of 42 U.S.C.), Title V of the Mental Health Systems Act, 42 U.S.C. § 9501 et seq., the Restatement of Bill of Rights for Mental Health Patients, 42 U.S.C. § 10841, the Americans with Disabilities Act of 1990, as amended, 42 U.S.C.A. § 12101-12213, or the Rehabilitation Act of 1973, § 504(a), 29 U.S.C. § 794(a).

Courts have found no private right of action under HIPAA. *See Rzayeva v. United States*, 492 F. Supp. 2d 60 (D. Conn. 2007). To the extent any remaining portions of Mele's complaint allege a violation of HIPAA, any claim Mele makes under that statute for damages or injunctive relief fails against all defendants.

Neither may Mele seek recovery under 42 U.S.C. § 10841, entitled "Restatement of Bill

of Rights for Mental Health Patients." *See Monahan v. Dorchester Counseling Ctr., Inc.*, 961 F.2d 987, 994 (1st Cir. 1992). The statute, which restates the provisions of Title V of the Mental Health Systems Act, 42 U.S.C. § 9501 et seq., is "merely precatory" and creates no "enforceable federal rights." *Id.* at 994-95. The defendants are entitled to summary judgment to the extent that Mele claims violations of 42 U.S.C. §§ 10841 and 9501, because those statutes neither give a plaintiff a private right of action nor create enforceable federal rights. *See, e.g.*, *In re Green*, 42 Fed. Appx. 815, 817, 819 (7th Cir. 2002) (affirming holding that section 10841 created no private right of action); *Monahan*, 961 F.2d 987, 994 (1st Cir. 1992) (holding no enforceable federal rights and declining to address whether statute creates a private right of action); *see also Carmack v. National R.R. Passenger Corp.*, 486 F. Supp. 2d 58, 87 (D. Mass. 2007) (holding section 10841 creates no enforceable federal rights); *Smith v. Au Sable Valley Comm. Mental Health Servs.*, 431 F. Supp. 2d 743, 750-51 (E.D. Mich. 2006) (holding neither section 9501(1)(G) nor section 10841 creates an individual federal right enforceable under section 1983); *Brooks v. Johnson & Johnson, Inc.*, 685 F. Supp. 107, 108-09 (E.D. Pa. 1988) (holding section 10841 does not create enforceable rights and duties).

Mele cannot prevail on his claims, under the Rehabilitation Act and Title II and Title III of the Americans with Disabilities Act ("ADA"), that the defendants failed to make reasonable accommodations for his disabilities. Under section 504 of the Rehabilitation Act, entities that receive federal funding are prohibited from discriminating on the basis of an individual's disability. It is undisputed that the Hill Health Center and Grant Street Partnership receive federal funding. To establish a violation under either the ADA or section 504, the plaintiff must demonstrate that: (1) he is a "qualified individual" with a disability; (2) the defendants are

subject to the ADA; and (3) that the plaintiff was denied the opportunity to participate in or benefit from defendants' services, programs, or activities, or was otherwise discriminated against by defendants, by reason of plaintiff's disabilities. *See Henrietta D. v. Bloomberg*, 331 F.3d 261, 272 (2d Cir. 2003); *Doe v. Pfrommer*, 148 F.3d 73, 82 (2d Cir. 1998).

Even assuming Mele could satisfy the first step and show he is an individual with a disability, he cannot satisfy the third step. Mele has not alleged any facts suggesting that his discharge was due to his disability. To the contrary, to the extent his disability was drug addiction, the defendants were treating his disability. To the extent his disability is a physical condition, *e.g.*, degenerative disc disease (Pl. Amended Compl., doc. # 31, at 3 ¶ 8), there is no evidence that the defendants' decision to discharge Mele was based on that disability. Mele's claims under the ADA and Rehabilitation Act fail because has not shown he was discriminated against because of a disability.

  B. <u>Claims For Medical Malpractice Against Institutional Defendants and Named Defendants in Their Official Capacities</u>

Mele's claims for harms arising from the provision of medical care or related services fail because he cannot show he has satisfied administrative prerequisites to bringing suit.

In a tort action against federal officers, 28 U.S.C. § 2679(b)(1) provides for the substitution of the United States as a party upon certification by the Attorney General that the officers were acting within the scope of their employment. *See Rivera v. United States*, 928 F.2d 592, 608-09 (2d Cir. 1991). The Public Health Services Act ("PHS Act"), as amended by the Federally Supported Health Centers Assistance Act of 1995, provides that eligible community health centers and their employees are considered federal agency employees under the PHS Act

for certain purposes. *See* 42 U.S.C. § 233(g)(1)(A) & (F). Under section 233(a), PHS employees enjoy immunity from medical malpractice claims or other claims, including claims for violating constitutional rights, if the alleged harmful action occurred while the employees were providing medical or related services. *See Cuoco v. Moritsugu*, 222 F.3d 99, 108 (2d Cir. 2000).

Defendants have demonstrated that they fall within the purview of section 233(a) and that substitution of the United States as defendant is proper. The defendants provided a declaration from Richard G. Bergeron, Senior Attorney, Claims and Employment Law Branch, General Law Division, Office of the General Counsel, Department of Health and Human Services, stating that the defendants, as employees of Hill Health Center, a federally supported health center, are deemed to be employees of the Public Health Service. They have also provided an affidavit from John Hughes, Chief of the Civil Division of the Office of the United States Attorney for the District of Connecticut, stating that the defendants were acting within the scope of their employment at the Grant Street Partnership, a subsidiary of Hill Health Corporation, during the incidents underlying the complaint. (Defs.' Mot. Summ. J., Ex. 1 & 2, docs. ## 60-3, 60-4.) Mele argues against substitution on the ground that defendants Kalfaian, Ward, Baltazar and Sabel are not physicians or nurses. Section 233(a), however, is not restricted to physicians and nurses. *See, e.g.*, *Dawson v. Williams*, No. 04-1834, 2005 WL 475587, at *8-9 (S.D.N.Y. Feb. 28, 2005) (Health Services Administrator covered by section 233(a)).

Mele has provided no evidence to suggest that the decision to terminate his treatment was based on reasons unrelated to his medical care. The defendants filed affidavits documenting the reasons for discharging Mele from the program and the relationship between the decision and plaintiff's treatment. (Affidavits of Kathleen Sabel, Sandra Chaves Baltazar and Linda M. Haas

(née Kalfaian), docs. ## 60-6, 60-5 & 60-7.) There is no genuine issue of material fact that the decision to terminate Mele from the program involved a related function within the meaning of section 233(a). The decision to terminate was made within the scope of the individual defendants' employment and the United States must be substituted as the defendant for the purposes of the discharge claim. Because, following substitution, Mele is suing the United States, the Federal Tort Claims Act is Mele's sole remedy for claims relating to his discharge from the treatment program.

Under the Federal Tort Claims Act ("FTCA"), the United States has waived sovereign immunity for claims seeking money damages for injuries caused by a federal official while acting within the scope of his employment if a private person committing the same act would be liable under the law of the state where the incident occurred. *See* 28 U.S.C. § 1346(b). Before bringing an FTCA claim, Mele must exhaust his administrative remedies with the appropriate federal agency. *See* 28 U.S.C. § 2675(a). The requirement that Mele file an administrative claim before bringing an FTCA claim in district court is jurisdictional and cannot be waived. *See Keene Corp. v. United States*, 700 F.2d 836, 841 (2d Cir. 1983). Mele conceded in response to defendants' motion to dismiss that he has not exhausted his administrative remedies. (Pl. Memo Supp., doc. # 42, at 10-11, Point 21.) Thus, this court lacks jurisdiction to entertain Mele's FTCA claim. Accordingly, the defendants' motion for summary judgment is granted without prejudice to Mele pursuing his administrative remedies; because this court lacks jurisdiction to address the merits of Mele's claims, his motion for summary judgment is denied.

To the extent the individual defendants' acts did not relate to medical services, they are not protected by immunity for violating constitutional rights. *See Cuoco*, 222 F.3d at 109. The

viability of those claims is discussed below. I conclude that, even assuming Mele could show the alleged acts occurred outside the scope of providing medical or related services, his claim still does not survive summary judgment.

      C.      Section 1983 and *Bivens* Claims

In his second amended complaint, Mele brings a claim under 42 U.S.C. § 1983. Unless the defendants acted under color of state law, as required by section 1983, Mele's actions must be construed as being brought pursuant to *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388, 395-98 (1971). *See Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 510 (2d Cir. 1994). Under section 1983 or *Bivens*, Mele may seek damages from defendants acting in their individual capacities whose conduct violates his constitutional rights. *See Ellis v. Blum*, 643 F.2d 68, 84 (2d Cir. 1981).

      1.      *Section 1983 and State Action*

Even assuming Mele could show a deprivation of his constitutional rights, he has not provided evidence suggesting that any of the defendants are state actors or otherwise acted "under color of state law" when they caused the alleged harm. The mere fact that Hill Health Center and Grant Street Partnership receive federal funding, and may receive state funding, does not necessarily make either a state actor. *See Chance v. Reed*, 538 F. Supp. 2d 500, 507 (2008). All the defendants are nominally private actors. In the Second Circuit:

> For the purposes of section 1983, the actions of a nominally private entity are attributable to the state when: (1) the entity acts pursuant to the "coercive power" of the state or is "controlled" by the state ("the compulsion test"); (2) when the state provides "significant encouragement" to the entity, the entity is a "willful participant in joint activity with the [s]tate," or the entity's functions are "entwined" with state policies ("the joint action test" or "close nexus test"); or (3) when the entity "has been delegated a public function by

the [s]tate," ("the public function test").

*Sybalski v. Independent Group Home Living Program, Inc.*, 546 F.3d 255, 257 (2d Cir. 2008) (citing *Brentwood Academy v. Tennessee Secondary School Athletic Ass'n*, 531 U.S. 288, 296 (2001)). Whether action is "fairly attributable" to the government depends on the facts of the case. *See Brentwood*, 531 U.S. at 296. I conclude that, on the record before me, Mele has not raised a genuine issue of material fact that any of these tests are satisfied.

The defendants merely administer a drug intervention program. Although it is true that the Connecticut legislature has required the Connecticut courts to consider whether criminal suspects and convicted persons may complete such a drug intervention program in lieu of prosecution or serving a sentence, creating that opportunity does not covert the private program into state action. *See* Conn. Gen. Stat. §§ 17a-696 to -701.

Because Mele cannot show the Hill Health Center, Grant Street Partnership, or any of the named defendants were state actors or acted under color of state law, his section 1983 claims fail as a matter of law.

    2.  *Bivens* Claims

In a *Bivens* action, a plaintiff may recover damages for constitutional violations by federal officials even in the absence of any statute specifically conferring a cause of action. *See Carlson v. Green*, 446 U.S. 14, 18 (1980). Such an action lies only against the federal officers in their individual capacities.

      a.  *Bivens* Claims Against Defendants in Their Official Capacities

The doctrine of sovereign immunity prohibits a plaintiff from recovering damages from the United States without consent. The United States may assert its sovereign immunity from

suit "save as it consents to be sued . . . , and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit." *United States v. Mitchell*, 445 U.S. 535, 538 (1980) (citation omitted). The United States has not waived its sovereign immunity for damages arising from constitutional violations. *Keene Corp. v. United States*, 700 F.2d 836, 845 n.13 (2d Cir. 1983).

An action against a federal agency or federal officers in their official capacities is treated as a suit against the United States. *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985). Therefore, suits against federal agencies and officers in their official capacities are barred under the doctrine of sovereign immunity. *See Federal Deposit Ins. Corp. v. Meyer*, 510 U.S. 471, 475 (1994). Mele may not maintain his action against the named defendants in their official capacities. Even assuming that the Hill Health Center and Grant Street Partnership are federal agencies, Mele may not bring a *Bivens* action against them because they are protected by sovereign immunity. The *Bivens* claims against the defendants in their official capacities must be dismissed because the court lacks subject matter jurisdiction over those claims. *See Meyer*, 510 U.S. at 485-86.

                b.        Individual Capacity Claims Against the Individual Defendants

A *Bivens* actions based upon an alleged federal constitutional violation may be brought against a federal employee in his or her individual capacity. A *Bivens* remedy is available to a plaintiff if the complained of conduct was outside the scope of employment or was taken outside the course of a medical or related decision. *See Cuoco*, 222 F.3d at 108.

Mele's claim must be dismissed because he has not raised a genuine issue of material fact whether his constitutional rights were violated by any of the named defendants. I previously

denied any claims for deliberate indifference to medical needs or disclosure of medical information.  Additionally, Mele's privacy, discrimination, equal protection and due process claims are without merit.  Although Mele alleges that he was harmed, his factual narrative does not show who harmed him and in what way any alleged harms implicate his constitutional rights.  Mele cannot rely on bare assertions and has submitted insufficient evidence to withstand summary judgment.

Mele cannot show he was prevented from pursuing administrative remedies.  The parties' submissions show Mele was not prevented from filing a grievance before he was terminated; he simply failed to do so.  Mele submitted a copy of the form he signed acknowledging the grievance process.  The form provides that Mele could file a written grievance regarding involuntary discharge from the program within twenty-four hours after the incident being grieved.  (Pl. Brief. Supp. Summ. J., doc. # 68, Ex. 3.)  The notice does not, as Mele argues, provide that any discharge decision will be stayed for twenty-four hours pending the filing of a written grievance.  Thus, there is no factual basis for Mele's claim that the defendants prevented him from filing a grievance before he was returned to face criminal charges.

Mele also argues that he was denied due process because defendants refused to allow him to return to the treatment program.  He assumes that, because the state court inquired whether the defendants would accept him back in the program, that he has a constitutional right to a second chance to complete the program.  He provides a page from the Grant Street Partnership 2005 Annual Report describing participation in the Drug Intervention Program.  (Pl. Brief. Supp. Summ. J., doc. # 68, Ex. 4.)  The excerpt describes a "two strikes" policy under which clients who fail to comply with program rules may be returned to prison for ten days and then permitted

to resume the program. The third failure to comply results in remand to the custody of the Department of Correction to serve a predetermined sentence. (Pl. Brief. Supp. Summ. J., doc # 68, Ex. 4.)

The defendants state that the "two strikes" policy is a feature of the Drug Intervention Program of the state court, not of Grant Street Partnership. Defendants merely order program participants to return to court when they fail to comply with program rules and the court decides whether a program participant is remanded to custody for a ten-day period or the previously imposed sentence. The Drug Intervention Program description shows that it is a cooperative effort by the state court and participating treatment providers. The fact that the state court considered whether the defendants were willing to readmit Mele would not permit a jury to find that the final decision to remand him to custody was made by the defendants. In fact, Mele himself states that the state court remanded him to the custody of the Connecticut Department of Correction because there were no openings in any other programs. (Pl. Response Memo., doc. # 83 at 4 ¶ 6.)

In addition, Mele has no constitutional right to participate in a rehabilitation program. *See Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976) (inmates have no right to rehabilitative or vocational programs). Similarly, he has no constitutionally protected right to release on parole, a status similar to the alternative sentence imposed in this case. *Pugliese v. Nelson*, 617 F.2d 916, 923 (2d Cir. 1980). No state statute guarantees Mele the right to participate in the Drug Intervention Program or be given second and third chances to comply with program rules once admitted. Thus, there is no constitutionally protected right to be afforded a second chance to complete the program.

While he was participating in the Drug Intervention Program, Mele was like a parolee; he

was living in the community subject to certain restrictions. Inmates released on parole have a due process right to an informal hearing before parole is revoked. *Morrissey v. Brewer*, 408 U.S. 471, 484, 489 (1972). Before he was incarcerated, Mele was afforded a hearing in state court at which he was represented by counsel. Thus, he was afforded the procedural due process to which he was entitled.

        D.      Remaining Causes of Action

Finally, to the extent Mele claims that being denied a second chance at completing the program and having to bear the cost of treatment were invalid actions under an agreement he had with the treatment program, those are not claims that arise under the Constitution or federal law. Those claims sound in Connecticut's common law of contracts. I decline to retain jurisdiction over any such remaining pendent state law claims because summary judgment will enter on all of Mele's federal claims.

## VI.    Conclusion

Defendants' motion for summary judgment (**doc. # 60**) is **GRANTED**. Plaintiff's motion for summary judgment (**doc. # 63**) and his motions for reconsideration (**docs. ## 62, 69**) are **DENIED**. The Clerk is directed to enter judgment in favor of the defendants and close this case.

**SO ORDERED** at Bridgeport, Connecticut this 31st day of March 2009.

                                                          /s/ Stefan R. Underhill
                                                              Stefan R. Underhill
                                                               United States District Judge